# UNITED STATES DISTRICT COURT
for the
District of Colorado

In the Matter of the Search of )
*(Briefly describe the property to be searched or identify the person by name and address)* )
)
A Dell Inspiron 1420 laptop computer, model PP26L, and other devices, held in evidence and currently stored at the Denver FBI Rocky Mountain Computer Forensic Laboratory located at 9195 East Mineral Avenue #300 in Centennial, Colorado, more fully described in Attachment A, attached hereto. )

Case No. 17-sw-06130-NYW

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that there is now concealed on the following person or property located in the __State and__ District of __Colorado__ *(identify the person or describe property to be searched and give its location)*:

**SEE "ATTACHMENT A"**, which is attached to and incorporated in this Application and Affidavit
The person or property to be searched, described above, is believed to conceal *(identify the person or describe the property to be seized)*:

**SEE "ATTACHMENT B"**, which is attached to and incorporated in this Application and Affidavit
The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

    **X** evidence of a crime;

    **X** contraband, fruits of crime, or other items illegally possessed;

    **X** property designed for use, intended for use, or used in committing a crime;

    ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of 18 U.S.C. §§ 2252 and 2252A, and the application is based on these facts:
    **X** Continued on the attached affidavit, which is incorporated by reference.

    ☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

    *s/Grahm L. Coder, Special Agent, FBI.*
    *Applicant's signature*

    *Grahm L. Coder, Special Agent, FBI*
    *Printed name and title*

Sworn to before me and: ☐ signed in my presence.
    ☒ submitted, attested to, and acknowledged by reliable electronic means.

Date: **30 Aug 2017**

*Judge's signature*
Nina Y. Wang
United States Magistrate Judge
*Printed name and title*

City and state: __Denver, Colorado__

## ATTACHMENT A

## DESCRIPTION OF LOCATION TO BE SEARCHED

The property to be searched is listed as follows:

A "Wphoto" 2 GB SD memory card; a PNY 2GB SD memory card; a Centon 512 MB USB drive; a gray USB 2.0 SD/MMC/RS-MMC device; a Seagate Momentus 5400 hard drive, 320 GB with serial number 5VD76DDS; a blue USB portable hard drive; and, a Dell Inspiron 1420 laptop computer, model PP26L, hereinafter the "Devices." These Devices are currently located at the Denver FBI Rocky Mountain Computer Forensic Laboratory located at 9195 East Mineral Avenue #300 in Centennial, Colorado.

This warrant authorizes the forensic examination of the Devices for the purpose of identifying the electronically stored information described in Attachment B.

# ATTACHMENT B

## DESCRIPTION OF ITEMS TO BE SEIZED AND SEARCHED

For the Devices listed and described in Attachment A, the following items, that constitute evidence of the commission of, contraband, the fruits of crime, or instrumentalities of violations of Title 18, United States Code, Sections 2252(a)(1), (2), and (4) and 2252A(a)(1), (2), (3), and (5):

1. Images or visual depictions of child pornography.

2. Records and information containing child erotica, including texts, images and visual depictions of child erotica.

3. Any and all information, notes, software, documents, records, or correspondence, in any format and medium, pertaining to violations of 18 U.S.C. §§ 2252(a)(1), (2), and (4) and 2252A(a)(1), (2), (3), and (5):

4. Any and all information, notes, documents, records, or correspondence, in any format or medium, pertaining to child pornography or sexual activity with or sexual interest in minors.

5. Any and all information, notes, documents, records, or correspondence, in any format or medium, concerning Internet activity reflecting a sexual interest in minors or child pornography.

6. Any and all information, notes, software, documents, records, or correspondence, in any form and medium pertaining to any minor who is, or appears to be, the subject of any visual depiction of child pornography, child erotica, sexual activity with other minors or adults, or of sexual interest, or that may be helpful in identifying any such minors.

7. Any and all address books, names, and lists of names and addresses of individuals who may have been contacted by use of the Devices or by other means for the purpose of committing violations of 18 U.S.C. §§ 2252(a)(1), (2), and (4) and 2252A(a)(1), (2), (3), and (5).

8. Any and all information, notes, documents, records, or correspondence, in any format or medium, concerning membership in online groups, clubs, or services that provide or make accessible child pornography.

9. Any and all information, records, documents, invoices and materials, in any format or medium, that concern any accounts with an Internet Service Provider pertaining to violations of 18 U.S.C. §§ 2252(a)(1), (2), and (4) and 2252A(a)(1), (2), (3), and (5).

10. Any and all information, records, documents, invoices and materials, in any format or medium, that concern e-mail accounts, online storage, or other remote computer storage

   pertaining to violations of 18 U.S.C. §§ 2252(a)(1), (2), and (4) and 2252A(a)(1), (2), (3), and (5).

11. Records of Internet activity, including Internet Protocol addresses, firewall logs, transactions with Internet hosting providers, co-located computer systems, cloud computing services, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses pertaining to violations of 18 U.S.C. §§ 2252(a)(1), (2), and (4) and 2252A(a)(1), (2), (3), and (5) or that show who used, owned, possessed, or controlled the Devices.

12. Any and all information, documents, records, photos, videos, or correspondence, in any format or medium, pertaining to use or ownership of the Devices, or that aid in the identification of persons involved in violations of 18 U.S.C. §§ 2252(a)(1), (2), and (4) and 2252A(a)(1), (2), (3), and (5).

13. Credit card information, bills, and payment records pertaining to violations of 18 U.S.C. §§ 2252(a)(1), (2), and (4) and 2252A(a)(1), (2), (3), and (5).

14. Descriptions of time, date, locations, items, or events showing or tending to show the commission of, or connecting or tending to connect a person to violations of 18 U.S.C. §§ 2252(a)(1), (2), and (4) and 2252A(a)(1), (2), (3), and (5).

15. Evidence of who used, owned, or controlled the Devices to commit or facilitate the commission of the crimes described, or at the time the things described in this warrant were created, edited, or deleted, including photographs, videos, logs, call logs, phonebooks, address books, contacts, IP addresses, registry entries, configuration files, saved usernames and passwords, documents, calendars, browsing history, search terms, metadata, user profiles, e-mail, e-mail contacts, messages (text or voice), instant messaging logs, file structure and correspondence.

16. Evidence of software that may allow others to control the Devices, such as viruses, Trojan horses, and other forms of malicious software, as well as evidence of the presence or absence of security provisions or software designed to detect malicious software or unauthorized use of the device, and evidence of the lack of such malicious software.

17. Evidence of the attachment to the Devices of other storage devices or similar containers for electronic evidence.

18. Evidence of counter-forensic programs (and associated data) that are designed to eliminate data from the Devices.

19. Evidence of how and when the Devices were used or accessed to determine the chronological context of computer access, use, and events relating to crime under investigation and to the computer user;

20. The telephone number, ESN number, serial number, and/or SIM card numbers of or contained in the Devices.

21. Passwords, encryption keys, and other access devices that may be necessary to access the Devices.

22. Contextual information necessary to understand the evidence described in this attachment.

DEFINITIONS:

23. As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as hard disks or other media that can store data); any handmade form (such as writing, drawing, painting); any mechanical form (such as printing or typing); and any photographic form (such as microfilm, microfiche, prints, slides, negatives, videotapes, motion pictures, or photocopies).

24. "Child Pornography" is defined in 18 U.S.C. § 2256(8), which includes as any visual depiction of sexually explicit conduct involving the use of a minor; a digital image, computer image, or computer-generated image that is, or is indistinguishable from that of a minor engaged in sexually explicit conduct; or a visual depiction that has been created, adapted, or modified to appear than an identifiable minor is engaging in sexually explicit conduct.

25. "Visual depiction" includes prints, copies of visual images, developed and undeveloped film and videotape, and data stored on computer disk or by electronic means, which is capable of conversion into a visual image.  See 18 U.S.C. § 2256(5).

26. "Child Erotica" means materials or items that are sexually arousing to persons having a sexual interest in minors but that are not, in and of themselves, obscene or that do not necessarily depict minors in sexually explicit poses or positions; this also includes texts or discussions regarding minors engaged in sexual acts or conduct.

# AFFIDAVIT

I, Special Agent Grahm L. Coder, being duly sworn, hereby depose and state that the following is true to the best of my information, knowledge, and belief:

## INTRODUCTION AND AGENT BACKROUND

1. I am a Special Agent with the Federal Bureau of Investigation ("FBI"), and have been since January 4, 2009. As a Special Agent with the FBI I have investigated a wide variety of federal criminal violations to include violent crimes, narcotics crimes, crimes against children, computer crimes, financial crimes, and other federal violations to include national security matters. I have received training and gained experience in interviewing techniques, arrest procedures, search warrant applications, the execution of search and seizures, and various other criminal laws and procedures. As part of my duties, I investigate criminal violations relating to child exploitation and child pornography, including violations pertaining to the illegal production, distribution, receipt and possession of child pornography, in violation of Title 18, United States Code, Sections 2251, 2252, and 2252A. I also have received training and instruction in the field of investigation of child pornography and have had the opportunity to participate in investigations relating to the sexual exploitation of children. As part of my training and experience, I have reviewed images containing child pornography in a variety of formats (such as digital still images and video images) and media (such as digital storage devices, the Internet, and printed images).

2. This affidavit is submitted in support of an application for a search warrant for computers and related equipment (more fully described in Attachment A), and the data located therein, there being probable cause to believe that located in the place described in Attachment A are items described in Attachment B, being evidence, fruits, and instrumentalities of violations of Title 18, United States Code, Sections 2252(a)(1), (2), and (4) and 2252A(a)(1), (2), (3), and (5).

3. Because this affidavit is being submitted for the limited purpose of securing a search warrant, I have not included each and every fact known to me concerning this investigation. I have set forth facts that I believe are necessary to establish probable cause to believe that evidence, fruits, and instrumentalities of violations of Title 18, United States Code, Sections 2252 and 2252A are located in the place described in Attachment A.

4. The information contained within the affidavit is based on my training and experience, as well as information imparted to me by other law enforcement officers involved in this investigation.

## RELEVANT STATUTES

5. This investigation concerns alleged violations of 18 U.S.C. Sections 2252 and 2252A, relating to material involving the sexual exploitation of minors.

6. 18 U.S.C. Sections 2252 and 2252A prohibit a person from knowingly possessing or accessing sexually explicit images (child pornography) with the intent to view them as well as transporting, receiving, distributing or possessing in interstate or foreign commerce, or by using any facility or means of interstate or foreign commerce, any visual depiction of minors engaging in sexually explicit conduct (child pornography).

## DEFINITIONS

7. The following definitions apply to this Affidavit and Attachment B to this Affidavit.

8. "Child Pornography" includes the definition in 18 U.S.C. § 2256(8) (any visual depiction of sexually explicit conduct where (a) the production of the visual depiction involved the use of a minor engaged in sexually explicit conduct, (b) the visual depiction is a digital image, computer image, or computer-generated image that is, or is indistinguishable from, that of a minor engaged in sexually explicit conduct, or (c) the visual depiction has been created, adapted, or modified to appear that an identifiable minor is engaged in sexually explicit conduct).

9. "Visual depictions" includes prints, copies of visual images, developed and undeveloped film and videotape, and data stored on computer disk or by electronic means, which is capable of conversion into a visual image  See 18 U.S.C. § 2256(5).

10. "Child Erotica" means materials or items that are sexually arousing to persons having a sexual interest in minors but that are not, in and of themselves, obscene or that do not necessarily depict minors in sexually explicit poses or positions.

## IDENTIFICATION OF THE DEVICES TO BE EXAMINED

11. Several items are held in evidence at the Denver FBI Rocky Mountain Computer Forensic Laboratory Evidence Room in Denver, Colorado.  These items were originally discovered in the possession of Adrien Abuyen and seized pursuant to verbal consent.  They are all being held in evidence in the case of United States v. David Michael ANSBERRY.  The items include a "Wphoto" 2 GB SD memory card; a PNY 2GB SD memory card; a Centon 512 MB USB drive; a gray USB 2.0 SD/MMC/RS-MMC device; a Seagate Momentus 5400 hard drive, 320 GB with serial number 5VD76DDS; a blue USB portable hard drive; and, a Dell Inspiron 1420 laptop computer, model PP26L, hereinafter referred to as the "Devices."  These items used to belong to David Michael ANSBERRY.  ANSBERRY abandoned the items by giving them to Abuyen when ANSBERRY gave up his lease and left California for Colorado.

12. I believe there is probable cause to believe that the Devices are or contain evidence, fruits, and instrumentalities of violations of Title 18, United States Code, Sections 2252(a)(1), (2), (4), and 2252A(a)(1), (2), (3), and (5). The applied-for warrant would authorize the forensic examination of the Devices for the purpose of identifying electronically stored data particularly described in Attachment B.

13. The Devices are currently in the lawful possession of the FBI. They came into the FBI's possession in the following pursuant to verbal consent given by Adrien Abuyen. Therefore, while I might already have all necessary authority to examine the Devices, I am seeking this additional warrant out of an abundance of caution to be certain that an examination of the Devices will comply with the Fourth Amendment and other applicable laws.

14. The Devices are currently in storage at the Denver FBI Rocky Mountain Computer Forensic Laboratory located at 9195 East Mineral Avenue #300 in Centennial, Colorado. In my training and experience, I know that the Devices all have been stored in a manner in which the contents are, to the extent material to this investigation, in substantially the same state as they were when the Devices first came into the possession of the FBI.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

15. Based on my training and experience, I know about the following items, hereinafter and below and in the Attachments "Devices."

16. A hard disk drive ("HDD"), also known as a hard drive or hard disk, is a data storage device that consists of an external circuit board, external data, power connections, and internal glass, ceramic, or magnetically charged rotating metal platters that permanently store data even when powered off. A solid-state drive ("SSD"), also known as a solid-state disk, is a data storage device that uses integrated circuit assemblies as memory to permanently store data instead of using rotating platters. Flash drives, flash cards, and thumb drives are digital storage devices that can connect to computers or other devices using the appropriate connection. CDs/DVDs are digital storage devices capable of storing large amounts of digital data—a user can store information onto a CD/DVD by "burning" digital data to the device using a computer CD/DVD drive. These devices are capable of storing any electronic information including images, videos, word processing documents, programs and software, and web pages.

17. "Computers" or "digital storage media" or "digital storage devices" may be used interchangeably, and can include any physical object upon which computer data can be recorded as well as all types of electronic, magnetic, optical, electrochemical, or other high speed data processing devices capable of performing logical, arithmetic, or storage functions, including desktop and laptop computers, mobile phones, tablets, server computers, game consoles, network hardware, hard disk drives, RAM, floppy disks, flash memory, CDs, DVDs, and other magnetic or optical storage media.

18. Based on my knowledge, training, and experience, I know that computers and digital storage devices can store information for long periods of time. Similarly, things that have been searched for and viewed via the Internet are typically stored for some period of time on a device. This information can sometimes be recovered with forensic tools.

19. Based on my knowledge, training, and experience, examining data stored on computers and digital storage devices can uncover, among other things, evidence that reveals or suggests who possessed or used the computer or digital storage devices.

20. There is probable cause to believe that things that were once stored on the Devices may still be stored there, for at least the following reasons:

    A. Based on my knowledge, training, and experience, I know that digital files or remnants of such files can be recovered months or even years after they have been downloaded onto a storage medium, deleted, or viewed via the Internet. Electronic files downloaded to a storage medium can be stored for years at little or no cost. Even when files have been deleted, they can be recovered months or years later using forensic tools. This is so because when a person "deletes" a file on a digital storage device or computer, the data contained in the file does not actually disappear; rather, that data remains on the storage medium until it is overwritten by new data.

    B. Therefore, deleted files, or remnants of deleted files, may reside in free space or slack space—that is, in space on the storage medium that is not currently being used by an active file—for long periods of time before they are overwritten. In addition, a computer's operating system may also keep a record of deleted data in a "swap," "recovery," or "shadow copy" file.

    C. Wholly apart from user-generated files, computer storage media including digital storage devices and computers' internal hard drives can contain electronic evidence of how a computer has been used, what it has been used for, and who has used it. To give a few examples, this forensic evidence can take the form of operating system configurations, artifacts from operating system or application operation, file system data structures, and virtual memory "swap" or paging files. Computer users typically do not erase or delete this evidence, because special software is typically required for that task. However, it is technically possible to delete this information.

    D. Similarly, files that have been viewed via the Internet are sometimes automatically downloaded into a temporary Internet directory or "cache." Forensic review may also disclose when and by whom the Internet was used to conduct searches, view material, and communicate with others via the Internet.

21. *Forensic evidence.* As further described in Attachment B, this application seeks permission to locate not only electronically stored information on the Devices that might serve as direct

4

evidence of the crimes described on the warrant, but also forensic evidence that establishes how the Devices were used, the purpose of the use, who used the Devices, and when. There is probable cause to believe that this forensic electronic evidence might be on the Devices because:

   A. Data on the storage medium can provide evidence of a file that was once on the storage media but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file). Virtual memory paging systems can leave traces of information on the storage medium that show what tasks and processes were recently active. Web browsers, e-mail programs, and chat programs store configuration information on the storage medium that can reveal information such as online nicknames and passwords. Operating systems can record additional information, such as the attachment of peripherals, the attachment of USB flash storage devices or other external storage media, and the times the computer or device was in use. Computer file systems can record information about the dates files were created and the sequence in which they were created. This information can be recovered months or even years after they have been downloaded onto the storage medium, deleted, or viewed.

   B. Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

   C. A person with appropriate familiarity with how a digital storage device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

   D. The process of identifying the exact electronically stored information on storage media that are necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer or digital storage device and the application of knowledge about how a computer or digital storage device behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

   E. Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

   F. I know that when an individual uses an electronic device to aid in the commission of a crime, particularly crimes involving the sexual exploitation of children, the individual's electronic device will generally serve both as an

      instrumentality for committing the crime, and also as a storage medium for evidence of the crime. The electronic device is an instrumentality of the crime because it is used as a means of committing the criminal offense. The electronic device is also likely to be a storage medium for evidence of crime. From my training and experience, I believe that an electronic device used to commit a crime of this type may contain**:** Images containing elements of child erotica and/or child pornography, files, folders, metadata, etc. containing evidence related to child erotica and/or child pornography.

   G. I also know that those who engage in criminal activity will attempt to conceal evidence of the activity by hiding files, by renaming the format, (such as saving a .pdf image file as a .doc document file) or by giving them deceptive names such that it is necessary to view the contents of each file to determine what it contains.

   H. The computer or digital storage device's capability to store images in digital form makes it an ideal repository for child pornography and other files related to the sexual abuse and exploitation of children. The digital-storage capacity in devices has grown tremendously within the last several years. Thumb drives with a capacity of 32 gigabytes are not uncommon. Flash cards with a capacity of 32 gigabytes are not uncommon. Hard drives with the capacity of 500 gigabytes up to 3 terabytes are not uncommon. Phones with over 100 gigabytes in storage are not uncommon. Devices can store thousands of images and videos at very high resolution. These devices are often internet capable and can not only store, but can transmit images via the internet and can use the devices to store images and documents in internet or "cloud" storage spaces. Once this is done, there is no readily apparent evidence at the "scene of the crime". Only with careful laboratory examination of electronic storage devices is it possible to recreate the evidence trail. .

22. I recognize the prudence requisite in reviewing and preserving in its original form only such records applicable to the violations of law described in this Affidavit and in Attachment B in order to prevent unnecessary invasion of privacy and overbroad searches. I advise it would be impractical and infeasible for the Government to review the mirrored images of digital devices that are copied as a result of a search warrant issued pursuant to this Application during a single analysis. I have learned through practical experience that various pieces of evidence retrieved from digital devices in investigations of this sort often have unknown probative value and linkage to other pieces of evidence in the investigation until they are considered within the fluid, active, and ongoing investigation of the whole as it develops. In other words, the weight of each individual piece of the data fluctuates based upon additional investigative measures undertaken, other documents under review and incorporation of evidence into a consolidated whole. Analysis is content-relational, and the importance of any associated data may grow whenever further analysis is performed. The full scope and meaning of the whole of the data is lost if each piece is observed individually, and not in sum. Due to the interrelation and correlation between pieces of an investigation as that

investigation continues, looking at one piece of information may lose its full evidentiary value if it is related to another piece of information, yet its complement is not preserved along with the original. In the past, I have reviewed activity and data on digital devices pursuant to search warrants in the course of ongoing criminal investigations.

23. I have learned from that experience, as well as other investigative efforts, that multiple reviews of the data at different times is necessary to understand the full value of the information contained therein, and to determine whether it is within the scope of the items sought in Attachment B. In order to obtain the full picture and meaning of the data from the information sought in Attachments A and B of this application, the Government would need to maintain access to all of the resultant data, as the completeness and potential of probative value of the data must be assessed within the full scope of the investigation. As such, I respectfully request the ability to maintain the whole of the data obtained as a result of the search warrant, and to maintain and to review the data in the control and custody of the Government and law enforcement at times deemed necessary during the investigation, rather than minimize the content to certain communications deemed important at one time. As with all evidence, the Government will maintain the evidence and mirror images of the evidence in its custody and control, without alteration, amendment, or access by persons unrelated to the investigation.

24. *Nature of examination*. Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit seizing, imaging, copying and reviewing the contents of the Devices consistent with the warrant. The warrant I am applying for would authorize a later examination and perhaps repeated review of the Devices or information from a copy of the Devices consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the Devices to human inspection in order to determine whether it is evidence described by the warrant.

## INVESTIGATION

25. On the morning of October 11, 2016, a Nederland, Colorado police detective noticed a bag sitting in the parking lot outside the police department ("PD") upon his arrival for his shift. The PD is small, consisting of five officers and is located in the main commercial shopping district in town. The PD is typically open from 7am-3am and the detective was the first individual to report for duty on the morning of October 11, 2016.

26. The detective thought that the bag was lost property found by a resident, as is common in that area. He picked up the bag and brought it inside the PD. On opening the bag, the detective discovered that there was a cellular device with wires coming off of the phone which were connected to a battery and a suspicious powder. The detective immediately recognized it as an improvised explosive device. He then began evacuating the PD and neighboring businesses.

27. Upon arrival of the Boulder County Sheriff's Office ("BCSO") bomb squad, the device was systematically decommissioned by a robot by removing pieces of the bomb, to include the cell phone detonator. The cell phone was safely harvested and immediately placed in a makeshift Faraday box to prevent a cellular signal from being able to contact it.

28. The phone was taken to the BCSO and was forensically analyzed under a warrantless public safety exception. The results of the analysis showed that the telephone number assigned to the detonator phone device was 720-365-8360. Upon review of the call log for that phone, investigators learned that an alternate telephone number- 720-365-7811, dialed the detonator telephone multiple times.

29. Both of these phone numbers resolve back to AT&T. AT&T was contacted by law enforcement and told investigators that both telephone numbers were technically handled by a subsidiary of AT&T, TracFone, and thus AT&T would not be able to provide any subscriber information.

30. 2703(d) orders were served on TracFone for both telephone numbers. Investigators learned that the phones were sold at two local grocery stores.

31. Agents were dispatched to the stores where the phones were sold. Agents were successful in obtaining surveillance video of the purchases. Both purchases were made by a short male (later learned to be 3'6"), who had a long grey pony tail, and who wore a baseball hat, and was using crutches. The shorter male completed both transactions were using cash.

32. Upon learning of the description of the man who purchased the phones, the Chief of Police for Nederland, CO remarked that he saw an individual matching that description during evacuations from the Boulder Creek Lodge, a motel across the street from the PD, on the morning that the bomb was discovered.

33. Agents from the FBI went to the motel and were able to confirm with the hotel employees that they had a guest staying at the hotel on the morning of 10/11/2016 that matched that description of the man that was seen on the video surveillance purchasing the phones. The hotel provided a copy of the man's identification card that he provided when he checked in to the hotel. The information on that card included the following: David Michael ANSBERRY, date of birth 02/21/1952, address P.O. Box 3517, San Rafael, CA. ANSBERRY is listed as 3'6" tall, weighing 100 pounds. ANSBERRY also provided the phone number 415-310-9878 to the motel.

34. Telephone number 415-310-9878 resolved back T-Mobile. An emergency disclosure request was filed with T-Mobile and they were able to provide the subscriber name on that account as David ANSBERRY, address 1254 Idylberry Drive, San Rafael, CA.

35. The motel stated that they attempted to call a car service for ANSBERRY when he checked out of the hotel on 10/11/2016. Agents from the FBI contacted that taxi service and investigators were provided telephone number 415-209-8206 which ANSBERRY utilized with the taxi company. An emergency disclosure request was filed with Verizon, the carrier

    of that number, and they were able to provide the subscriber name on that account as David ANSBERRY, address 1254 Idylberry Drive, San Rafael, CA, with a secondary number of 415-310-9878 associated with his account. That number is the same number ANSBERRY provided to the motel.

36. Beginning on 10/18/2016, FBI Agents in California began interviewing residents who lived at or near 2336 Carleton Street, Berkeley, California.  This was an address that came back as listed to Ansberry on public records and from an examination of his cell phone records.

37. FBI Agents spoke with a man named Ian Woods who lived in Ansberry's apartment after he (Ansberry) moved out.  Woods took a tour of the apartment just before Ansberry moved out and while his (Ansberry's) belongings were still inside.  Woods noticed that Ansberry had engineering and organic chemistry books in the apartment along with computer parts and digital media storage devices. Woods stated that Ansberry left many of his belongings in the apartment even after he (Ansberry) moved out.

38. In addition to Woods, one of Ansberry's other neighbors was Adrien Abuyen.  On 10/19/2016, Abuyen told FBI Agents that Ansberry gave Abuyen a number of his (Ansberry's) belongings to Abuyen when he (Ansberry) moved out including a computer, flash drives, digital storage media cards, hard drives, and various computer equipment along with jars containing suspected fertilizer and a PH testing kit.  Abuyen consented for the FBI to collect all of the items that were given to him by Ansberry.  Specifically, the electronic media items Ansberry gave Abuyen are listed as follows:  a "Wphoto" 2 GB SD memory card; a PNY 2GB SD memory card; a Centon 512 MB USB drive; a gray USB 2.0 SD/MMC/RS-MMC device; a Seagate Momentus 5400 hard drive, 320 GB with serial number 5VD76DDS; a blue USB portable hard drive; and, a Dell Inspiron 1420 laptop computer, model PP26L.

39. In addition to the FBI's investigative efforts in Colorado where the explosive device was found, FBI Agents in California have conducted multiple interviews, executed multiple search warrants, and have seized items belonging to Ansberry to include the items that were given to Adrien Abuyen by Ansberry and that were ultimately surrendered to the FBI with the consent of Abuyen on 10/19/2016.  Subsequently, these items subject to this warrant application were sent by the FBI in California to the FBI office in Denver, Colorado.

40. I requested a search warrant to grant authority to search the "Devices" listed in Attachment A.  A search warrant was granted by the honorable Judge Nina Y Wang- United States Magistrate Judge for the District of Colorado, on May 17, 2017.  That warrant is docketed as 17-sw-05674-NYW.

**Discovery of Child Pornography**

41.  Beginning on May 17, 2017 and continuing until August 23, 2017 the FBI and I conducted the examination of the devices as they are listed in Attachment A.  The examination requires weeks in order to accomplish the task of reviewing the material without altering the original content.  In order to do this the FBI utilizes the assistance of the Rocky Mountain Regional

Forensic Computer Laboratory (hereinafter referred to as the RCFL) located at 9195 E Mineral Avenue, #300, Centennial, CO 80112.

42. I delivered the evidence items listed in Attachment A to the RCFL and requested that the RCFL make an identical copy of the evidence items for review. The RCFL utilizes technology and machinery to create exact replicas, also known as "imaged copies" of the data contained within the evidence items in order to allow for review of the evidence without altering original content.

43. I reviewed the imaged copies of the devices. During the review of the devices, I performed examinations and searches of the digital data using known search terms related to the original crime and related scope of the search warrant granted by the honorable Magistrate Judge Nina Y Wang- namely for items related to the use of a weapon of mass destruction.

44. In addition to the search for evidence items related to the use of a weapon of mass destruction, I examined the graphics, photographs, thumbnails, and images found on the devices. This portion of the examination required me to observe graphics, photographs, thumbnails, and images by directly looking at them with the eye.

45. During the review of the graphics, photographs, thumbnails, and images of the devices, and while still examining the material under the scope of the original search warrant, I came upon a multitude of images that included what appear to be images containing child pornography. A description of the images is provided below.

46. I observed that there were multiple images depicting children in sexual situations. The children represented what appeared to be differing age groups, some who appeared to be as young as 3-4 years old. The pictures contained children who were dressed in erotic clothing that exposed their genitalia. In addition to the children in clothing with their genitalia exposed, I observed additional pictures depicting young children in sexual situations. The images are described as follows:

47. "VINKA MODEL"- The image appears to be a young female, approximately 5-6 years of age. The female is in a position facing the camera while lying on her back. The female is wearing a shirt that is pulled up in a fashion that exposes her navel. The female is wearing neon green underwear that is worn in a fashion wherein the viewer can see her exposed vagina and rectum.

48. "440cd248f7a0075a.jpg"- The image depicts a grown male with his face out of the frame of the picture. The grown male is inserting his penis into the rectal area of a child of unknown gender. The child appears to be approximately 3-4 years old. The child is small enough for the grown male to be completely carrying the child at his waist level in the air with one hand while he uses the other hand to manipulate his erect penis into the rectal area of the child.

49. "59292d618640db.jpg"- The image depicts two young persons- one male and one female. The persons appear to be less than 12 years old. They are engaged in sexual intercourse wherein the naked male is on top of the naked female inserting his penis into her vagina.

10

50. "a4bf2f3eb08c9941.jpg"- The image depicts a young female child sitting on what appears to be the naked legs of an adult male.  The child is being held by the adult male.  The child is sitting on the lap of the adult male whose face is out of frame.  Both the adult male and the child sitting on the legs of the male are facing the camera.  The young child appears to be a 2-3 year old female child.  The child is sitting on the adult male.  The adult male is causing that the female child's legs are spread, thereby exposing her vagina.  The adult male is attempting to penetrate the female child's vagina with his finger.

51. "b9bf73091f312332.jpg"- The image depicts a collage of young children in different sexual situations.  The situations include:

    A. 3-4 year old female children who are lying on their back with their vaginas exposed.  Penises are penetrating the female vaginas.

    B. 3-4 year old female children who have penises being inserted into their mouths.

    C. 3-4 year old female children with what appears to be semen/ejaculate on their faces

52. "F1e150965b4c4ebf.jpg"- The image depicts an adult woman and a young female child approximately 3-4 years old.  The woman and the young child are both lying on their backs.  The woman has her hand over the vagina of the young female child in a manner wherein the adult female is manipulating the vagina to open and expose it to the camera.

53. Upon discovering the images listed in the above paragraphs, but before performing a full examination based solely on finding more child pornography, I requested that RCFL computer forensic observe the images and provide an opinion.  The examiner noted that among the images containing child pornography were well known images created by "LS" photography.  The computer examiner explained to me that "LS" photography was a well-known creator of child pornography/child erotica that was based in the Ukraine.  They were investigated and charged for crimes related to child pornography approximately 10 years ago by the Ukraine Police.  The computer forensic examiner also noted that the images contained pictures of children who appear to be as young as 3-4 years old and who were depicted in images of a sexual nature with their genitals exposed.

54. Immediately after the discovery of the images listed in the above paragraphs on August 23, 2017, I contacted the United States Attorney's Office in the District of Colorado.  I was aware that a separate search warrant might be required.  I notified an Assistant United States Attorney of the findings of material that appeared to contain child pornography.  I was told to cease further review until a new search warrant was obtained to include searching for evidence of crimes related to child pornography.

55. These Devices are currently in storage at the Denver FBI Rocky Mountain Computer Forensic Laboratory located at 9195 East Mineral Avenue #300 in Centennial, Colorado.  In my training and experience, I know that the Devices have been stored in a manner in which

their contents are, to the extent material to this investigation, in substantially the same state as they were when these Devices first came into the possession of the FBI.

## **INDIVIDUALS WHO HAVE A SEXUAL INTEREST IN CHILDREN AND RECEIVE AND/OR DISTRIBUTE CHILD PORNOGRAPHY**

56. Based on my previous training and experience related to investigations involving child pornography and the sexual abuse of children, I have learned that individuals who create, possess, receive, distribute or access with intent to view child pornography have a sexual interest in children and in images of children. Based upon my knowledge, experience, and training in child pornography investigations, and the training and experience of other law enforcement officers with whom I have had discussions, there are certain characteristics common to individuals involved in the receipt and collection of child pornography:

    A. The majority of individuals who create and collect child pornography are persons who have a sexual attraction to children. They receive sexual gratification and satisfaction from sexual fantasies fueled by depictions of children that are sexual in nature.

    B. The majority of individuals who create and collect child pornography collect sexually explicit materials, which may consist of photographs, magazines, motion pictures, video tapes, books, slides, computer graphics or digital or other images for their own sexual gratification. The majority of these individuals also collect child erotica, which may consist of images or text that do not rise to the level of child pornography but which nonetheless fuel their deviant sexual fantasies involving children. Non-pornographic, seemingly innocuous images of minors are often found on media containing child pornography. Such images are useful in attempting to identify actual minors depicted in child pornography images found during the execution of a search warrant. In certain cases, such images may also assist in determining the origins of a particular child pornography image or series of images.

    C. The majority of individuals who create and collect child pornography rarely, if ever, dispose of their sexually explicit materials and may go to great lengths to conceal and protect from discovery, theft, and damage their collections of illicit materials.

    D. The majority of individuals who create and collect child pornography often seek out like-minded individuals, either in person or on the Internet, to share information and trade depictions of child pornography and child erotica as a means of gaining status, trust, acceptance and support. This contact helps these individuals to rationalize and validate their deviant sexual interest and associated behavior. The different Internet-based vehicles used by such individuals to communicate with each other include, but are not limited to, e-mail, e-mail groups, bulletin boards, IRC, newsgroups, instant messaging, and other similar vehicles.

E. The majority of individuals who create and collect child pornography maintain books, magazines, newspapers and other writings, in hard copy or digital medium, on the subject of sexual activities with children, as a way of understanding their own feelings toward children, justifying those feelings and finding comfort for their illicit behavior and desires. Such individuals rarely destroy these materials because of the psychological support they provide.

F. The majority of individuals who create and collect child pornography often collect, read, copy or maintain names, addresses (including e-mail addresses), phone numbers, or lists of persons who have advertised or otherwise made known in publications and on the Internet that they have similar sexual interests. These contacts are maintained as a means of personal referral, exchange or commercial profit. These names may be maintained in the original medium from which they were derived, in telephone books or notebooks, on computer storage devices, or merely on scraps of paper.

G. Based upon training and experience I know that persons in engaged in the production and possession of child erotica are also often involved in the production and possession of child pornography. Likewise, I know from training and experience that persons involved in the production and possession of child pornography are often involved in the production and possession of child erotica.

H. Based on my training, knowledge, experience, and conversations with others in law enforcement, I understand that an individual who possesses images and/or videos depicting child pornography on one digital storage devices and/or Internet email or online storage account is likely to possess child pornography on additional digital storage devices and/or Internet email or online storage accounts that s/he possesses. Additionally, based on this training and experience, I understand that an individual who discusses the sexual abuse and/or exploitation of children on one digital storage device is likely to conduct those communications on additional digital storage devices that s/he possesses.

//

//

13

## CONCLUSION

57. Based on the investigation described above, probable cause exists to believe that inside the Devices (described on Attachment A), will be found evidence, fruits, and instrumentalities of a violation of Title 18, United States Code, Sections 2252(a)(1), (2), (4) and 2252A(a)(1), (2), (3), and (5) (described on Attachment B).

58. I, therefore, respectfully request that the attached warrant be issued authorizing the search and seizure of the items described in Attachment A for the items listed in Attachment B.

I declare under penalty of perjury that the foregoing is true and correct to the best of my information, knowledge, and belief.

> *s/Grahm L. Coder, Special Agent, FBI*
> Grahm L. Coder
> Special Agent, Federal Bureau of Investigation

SUBSCRIBED and SWORN before me this 30th day of August 2017

UNITED STATES MAGISTRATE JUDGE

Application for search warrant was reviewed and is submitted by Greg Holloway, Assistant United States Attorney.

14